So, if my colleagues are ready to forge ahead, I'll call our last case of the day, Manuel Rivas v. Midland Funding. Good morning and may it please the court, I'm Greg Beck on behalf of the plaintiff, Mr. Rivas. The defendant here, Midland Funding LLC, exists solely to acquire and collect debts. It is therefore, as the district court concluded, and Midland does not dispute on appeal, a debt collector under the terms of the FDCPA. So, the issue in this case arises because Midland Funding, as a debt collector, uses no employees of its own, but rather outsources all of its collection activities to its affiliated corporation, Midland Credit Management. And that, as every court to have faced the question has held, should not make any difference. Rather, the key question, as these courts have addressed, is whether the defendant is a debt collector under the Act. And because Midland Funding is a debt collector, it is responsible under the FDCPA as a matter of federal law for debts collected on its behalf. And there are several reasons why this is true as a matter of federal law under the FDCPA. First, Congress defined communication under the FDCPA as conveying information regarding a debt directly or indirectly. And likewise, it defined debt collector to include those who collect debts directly and indirectly. And so, the proper question under the law, as Congress wrote it, is whether a defendant is indirectly collecting a debt as a matter of federal law, not whether a defendant is vicariously liable as a matter of state law. Second, Congress defined debt collector to include companies with the principal purpose of collecting debts, even when they engage in collection activities only through their agents. And the district court here recognized this principle that a debt collector could be a debt collector even though it doesn't directly collect debts, but rather its principal purpose is to acquire those debts for the purposes of collection. Counsel, can I ask you two related questions? Yes. Okay. One, where does the term communication come into play with regard to Section 1692E2A, which is the statute that you were alleging a violation of? Is the term communication even used? And my next question is, under the portion of debt collector that you agree and that you argue that Midland falls within, does it use the term directly or indirectly? Because it seems to suggest that debt collector means any person who uses any instrumentality of interstate commerce or the mails in any business, the principal purpose of which is the collection of any debt, or who regularly collects or attempts to collect directly or indirectly debts. So doesn't the directly or indirectly fall under the Henson line of cases as opposed to the principal purpose line of cases? And doesn't this part of the statute you have here not use the term communication? I think you're correct, Your Honor, that the definition of debt collector that the district court relied on is the one, the principal purpose one, and does not use- And that you rely on, not just the district court, the one you rely on. Correct. That's correct, Your Honor. And I don't dispute that, but I think it does point to the fact that Congress recognized that collection activities could occur through- Without a doubt, those who regularly collect may do it directly or indirectly and be liable, but what you're trying to do is import directly or indirectly into the violation here, and I don't see the word communication ever used, and I don't see how this portion of the debt collector statute gives indirect liability here. So if you could address that for me, I'm having a bit of an issue with that. Yeah. So 1692E says it talks about a false, deceptive, or misleading representation or means in connection with the collection of any debt. So it doesn't, that section does not directly use the word communication. Right. And that's different than subsection G, the 922, I'm sorry, 1692G, which does use communication. So when you look at the Genetis case, which you sort of rely on very heavily and understandably, that was a G case in which communication is in fact used, right? Yes, but I don't see how Congress could have distinguished between representations and communications in that way. Isn't the use of a word and a definition, an indication of intent to use a different definition for those things? Well, for sure. But sometimes Congress also uses synonymous language to refer to similar conduct. But I guess my point is, the larger point is that Congress, in recognizing the scope of liability under the FDCPA, which is a strict liability statute this court has recognized, recognized that communications, whether you call them representations or communications, could occur indirectly or directly. So I think that the scope of the FDCPA as a whole shows that Congress knew that debt collectors could communicate through third parties. I have two questions for you, and I don't want your time to go out without you having an opportunity to respond to these. One, there's a big waiver argument in the case, that you just didn't make these arguments below, and I want you to address that. And the second question is just as a factual matter, why didn't you sue MCM, the entity that was actually corresponding with your client, that was actually actively collecting the debt that you allege made the miscommunications? So did you waive it, and just why didn't you sue MCM? Okay, so I don't think it was waived. The first half of the brief below in opposition to summary judgment was about two issues. Midland raised five issues on summary judgment, and two of them were, is it a debt collector because it outsources all of its debt collection activities? And that's the first part. And secondly, because it outsources it, is it not directly responsible for those activities that were outsourced? So they're sort of related arguments. One is that it's not a debt collector because it outsources, and two is that it didn't directly engage in the conduct because it outsources. And the first half of the brief addresses both of those kind of in a connected manner, because they are connected arguments. And it makes this point that indirect communications are covered under the FDCPA. And its central point, I think, is that Midland can be a debt collector and can be liable under the FDCPA, even if it outsources all of its debt collection activities. And the And I think the next logical step from that is that if it's a debt collector, if Congress intended it to be a debt collector, because it outsources everything, even though it outsources everything, it must therefore be liable for that outsource activities. Otherwise, there'd be no point in defining it as a debt collector under the act. So what did you respond to that argument by arguing that Midland would be vicariously liable, even if it did? I understood that Midland argues and tell me if I'm wrong, but I understood that Midland argued, look, we didn't have anything to do with this communication. We just hired somebody based on the communication. We didn't direct them, we didn't control the website, etc. Where in response to that did you say, yeah, even if all that's true, you're vicariously liable because you hire them. The words vicariously liable were not used, I think, because it's not really a vicarious liability argument. It's really a direct liability argument under the under the FDCPA. And I would point to this court. This court hasn't decided this question that was addressed in Janitus, but in Palm Beach Golf Center case that we said in our reply brief, the court deals with a similar question under the TCPA. And it's a very similar case, a dentist outsourced junk faxes to marketing. But counsel, in that case, the FCC specifically had an interpretive rule, which extended liability to those that did it on their behalf, right? Well, I think that is what I just said. I think that's I think that's right. I did not focus on the on the details of the TCPA claim. But I do. But I think I mean, the point is that that is not a question of state law, whether whether the source of you agree that the FTC, which is responsible for interpreting this statute has not done something similar that the FCC has. Yeah, I think I think that's fair. But the only point I'm not the only point I'm relying on Palm Beach Golf Center for is the point that it's whether the whether the source of federal law comes from, you know, an agency regulation or a statute, that's still a federal question of law that controls vicarious liability or direct liability under the statute, not not state vicarious liability, common law principles. I just want to be clear, though, you are for swearing as I read your gray brief, especially any reliance on state law, common law, vicarious liability. Your claim is this is a direct liability case under a plain reading of the statute, right? Yeah, we have we have, we have said that if the court, I think that we have not argued that we have asked that if the court establishes a standard of vicarious liability that incorporates state common law, that we would have an opportunity to argue that in front of the district court. But that's the extent of our argument on that. Mr. Beck, before you sit down. I have had a lot of Midland funding cases in my time on this court. It just out of curiosity, it is was this these three credit cards that Mr. Rivas had? Was that expired? Had the statute of limitations run on that debt? Or do you know? I don't think that it I don't think it was expired, or at least that fact's not in the record. Okay. All right. Thank you. My question about why you didn't just sue the entity that was corresponding with your client? Yeah, it's I think your honor, if you don't mind me going over my time, I'm happy to answer. And against Mr. Rivas was Midland funding, and the party to the settlement with Rivas was Midland funding. And Rivas, you know, up until this case was filed, and right up until summary judgment was argued, had no reason to know that Midland credit management was somehow responsible for the, you know, the real debt collector or the responsible party, rather than just, you know, the website that he went to. The URL had Midland credit in it. But, but the party on the the settlement agreement and the party on the complaint in the state court were Midland funding. Thank you. We'll hear from you in rebuttal. Thank you. Good morning. Good morning. May it please the court. My name is Lauren Burnett, and I a lot of FDCPA cases. There's something that we hear that's familiar to all of us in these FDCPA cases. And that's that the statute is to be broadly construed so as to effectuate its purpose. But that deference, that breadth of construction only applies to the FDCPA and doesn't leak out to the fundamental basics of federal civil procedure and practice. And so what that means is that plaintiffs who bring claims under the FDCPA are not excused from those fundamentals. They still have to show that they have Article 3 standing. They still have to abide by Rule 8a, which requires them to plead a short and plain statement of the claim that they intend to pursue. They still have to meet whatever burden of proof applies to whatever causes of action they do choose to pursue. But in this appeal, Mr. Rivas asks this court to apply that broad construction that courts have embraced for the FDCPA to federal pleading rules and to burdens of proof. And he asks the court essentially to not only relax the federal pleading standard, but to apply a different one to FDCPA plaintiffs alone, such that if there's a cause of action under any set of facts, it's a fallback to any set of facts standard that Twombly rejected, then complaints suffice under Rule 8. He's asking the court to excuse him from having to meet his burden, not only of proving the claim that he did plead in his first amended complaint, but the claims that now on appeal, he says both he did claim and he didn't have to plead. And he's asking the court to remand this case so that the district court can hear a claim that wasn't proven during discovery and that wasn't raised until this appeal. So since we're- Counsel, they did argue though that Midland, your company, the company you represent, was responsible for the conduct of MCM, right? That was an argument that was made. No, Your Honor, I actually disagree with that. Okay, so let me read the portions of the response to the summary judgment motion, and then I want to hear what you have to say, okay? Sure. This is from page four of the response to the summary judgment motion, quote, Midland has contractually authorized its related corporation. I'll just say MCM, but it says the whole corporation name. Understood. MCM to send debt collection letters and file state court lawsuits to collection debt, to collect debts due to Midland. Another quote from page five, Midland buys defaulted debts and engages in credit management to collect it and therefore falls within the definition of debt collector. Midland's sole business, it says if, but should purchasing defaulted debts and collecting on them through MCM. And then on page five and six, quote, Midland's communications to plaintiff through the state court lawsuit and through the website to which plaintiff was obligated to make these payments are indirect communications to plaintiff and thus are afforded coverage under FDCPA. Those communications were authorized by Midland pursuant to an agreement with MCM. Is that not exactly the argument that Mr. Beck is making today? No, your honor. It's not for two reasons. Number one, if you flip back to the very first page of the opposition, I think context matters here. And what Mr. Rivas is arguing is only that Midland funding is a debt collector and nothing more because absent from that section of his opposition and absent from the balance of his opposition and from his operative first amended complaint is any thread to close the loop. But page five and six says, and therefore is indirectly liable. I mean, so it's the, I get it's on a page one, but, but in the response, they say he's a debt collector and therefore is indirectly responsible for those that contractually authorized to act on my behalf. That's the argument. I understand Mr. Beck's argument, but I still have to disagree with your honor, because what it says is that the communications on the website were indirect communications. It does not say, and Midland funding is liable under X, Y, and Z for those indirect communications made by Midland credit management. That's the loop that's missing. The sentence that your honor is referring to on the bottom of page five says Midland's communications through the website are indirect communications and are thus afforded coverage under the FDCPA. I interpret that sentence to mean the representations on the website are actionable under the FDCPA. And the next sentence is those communications were authorized by Midland pursuant to an agreement with MCM, along with those two other sentences that I said. I mean, again, do we read this stuff that with that much of a fine tooth comb? The district court clearly understood the district court ruled they weren't responsible. These weren't representations for them. I mean, if the district court's not confused and I've read you these sentences, and I don't seem to be confused, at least it's the argument they do make. I'm just, I'm having a hard time understanding waiver here. Well, for two reasons. Number one, we have to go back to the fundamentals again. And if you look at the operative first amended complaint and you read it, I think Mr. Beck is correct that it absolutely asserts a direct liability claim. It seeks to hold Midland funding liable for Midland funding's own conduct, not for the conduct of anyone else. And the appellant's opening brief makes reference to magic language. No one is advocating for the use of magic language here, but there needs to be some indication in the complaint of the claim that the plaintiff seeks to bring. And in this appeal, Mr. Rivas says that he's seeking to hold Midland funding liable for the conduct of Midland credit management. But right down to characterizing the website as belonging to Midland funding in paragraph 29 of the first amended complaint, plaintiff visited defendant's website. There's nothing to even suggest that anyone except Midland funding engaged in any conduct at any point in time. So we have to start at the beginning and look at the claims that were pled because the whole point of rule 8A and Twombly's plausibility standard is to put Midland funding on notice of what it's expected to defend itself against. And at one point, I think the appellant suggests that we should go through the complaint and look to see if there's any set of facts under which we might be held liable under any theory. And that puts the defendants in the ultimate catch-22, because as your honors know, if you don't plead an affirmative defense to something, you risk waiver. But at the same time, if you throw every affirmative defense at the wall to see what sticks, you're going to get a motion to strike real quick and the district court is going to grant it if there's no factual nexus between all the affirmative defenses that you've thrown into the answer and what's actually pled. But let's assume, your honor, that your interpretation of those two sentences are correct. And that that's an argument that- I don't interpret anything. I merely have read them to you and asked for your view on them. Understood, understood. But let's take what you've read and let's take that to mean that plaintiff in his opposition to summary judgment was arguing some type of vicarious or agency or direct liability for indirect conduct theory. By the time summary judgment rolls around, your honor, it's too late. This court has held that an opposition to a summary judgment motion is not the time to amend one's pleading. And so even if plaintiff did raise this- But does vicarious liability need to be specifically pled? Yes, your honor, it does. And I- How do you read Palm Beach Golf for that proposition? I thought Palm Beach Golf was an interesting case and your honor hit the nail on the head. Palm Beach Golf was a junk facts TCPA case and the district court looking at the 2012 Dish Network declaratory ruling from the FCC read that to mean that only the person who hits send can be liable under the TCPA. But when this court invited the FCC's input in Palm Beach Golf Center, the FCC made two really important points. Number one, that Dish Network only applied to the voicemail and text provisions of the TCPA and not to the junk facts provisions of the TCPA. And secondly, as your honor pointed out, that in its 1995 rulemaking, they explicitly held that ultimate liability lay with the entity or entities directly- That goes to the merits, but on the issue of whether you need to plead specifically vicarious liability or even plead who the principal agent is, didn't Palm Beach Golf say neither was required in the complaint? Palm Beach Golf Center said neither was required within the specific factual boundaries of that case because of the FCC's rulemaking. Last year, this court in the Carrington Mortgage Services case noted that under consumer protection law, there's still a need to draw that line between the principal and agent because, your honor, play out the opposite viewpoint to some of the conclusions that we can see. And I'll draw from a real life example. Over the summer, there was a case from the Northern District of California, Gallegos versus Hunt and Enriquez. And Gallegos received a summons, a collection summons from purportedly Hunt and Enriquez, signed by the law firm for a debt she didn't recognize. And that summons turned out to be fake. It was a fraud. We hear about this all the time. The media talks about, you know, crackdowns on phantom debts and phantom litigation. Under this notion that a plaintiff doesn't have to plead or prove any type of vicarious or agency theory, as long as that creditor meets the FDCPA's statutory definition of debt collector, then that creditor is going to face liability for something that is a fraud. Counsel, you may be completely right on that. And frankly, I'm sympathetic to what you just said. But that to me is very different from the waiver argument and whether something needs to be pled or not. That goes to the merits. And on the merits, you may be completely right. But with regard to vicarious liability or even tell you who the agent is and then to let the case litigate out, I'm having a hard time understanding how, based on the pleading that the complaint, plus what was said in the response to the summary judgment, how we could argue waiver. Now, if you want to get to the merits and argue what you just argued, you know, I understand. Well, Your Honor, I think that at the heart of the waiver argument is the concept in Rule 8 that a plaintiff has to put the defendant on notice of what it is they're bringing in front of them and what it is the defendant is expected to defend. And when a complaint alleges, you did this, but then on appeal, the plaintiff says, oh, no, I meant you did this through your intermediary. And there's never been any indication that any of this has ever flowed from an intermediary during the course of the case in the trial court. I think it's very difficult to say that a plaintiff doesn't need at a minimum to plead something sufficient to put the defendant on underlying the claim that they intend to bring. And I think Your Honor asked, Judge Brasher asked a really good question, why Midland Credit Management wasn't sued as well. It's absolutely incorrect that this plaintiff wasn't aware of Midland Credit Management's involvement in this lawsuit until in the middle of summary judgment practice. The complaint from the inception has indicated Midland Credit Online. This is a plaintiff who is very familiar with the Midland entities, as is obvious from his litigation history. And frankly, most often these two entities are sued together. And so I don't purport to tell another lawyer who to identify as their parties, but the plaintiff is the master of the case that he wants to bring. And when a plaintiff says, I went to you, your Midland Fundings website, and I saw information, which by the way, was of no import to him, because I, you know, I meant to talk about standing first and we talked about other things, but he received information that had no impact on him. He continued to make his payments. He satisfied his payment plan. The only conduct he took that was out of line was to take screenshots of the websites and give them to his lawyer, who then used these to file the complaint. He says he was totally confused, but that's exactly the type of sort of ephemeral injury. A little more than confused. Doesn't he testify that he was, quote, concerned, quote, really upset, that he was stressed and worried, that he lost sleep, that his fiance can tell he was stressed out, that he had a hard time concentrating, and had a hard time sleeping just about every single night? Your Honor, that was his testimony with respect, I believe, to Midland Fundings' failure to dismiss two of the three debt collection lawsuits, and not with respect to what he viewed on the website, and the district court's ruling on the failure to dismiss the two lawsuits is not up on appeal. I'm not sure. I would take a look at page 54 and 55 of the transcript when he's discussed that he was concerned, really obsessed, stressed, and worried in relation to the website's misrepresentation, but I'll, but I, and I think these are pretty bound up closely together, but that you can't parse out testimony quite for, he was only testifying to that claim, but not as to this one, but I'll, I'll take a look at it and dig in a little further than that. Understood, Your Honor. I, I think that, you know, the opening line of the Trischel opinion from over the summer is really apt, and it reminded me of the, of the facts of this case, where the court said the plaintiffs complained that they received a debt collection communication that was misleading, but they don't complain that they were misled, and that's exactly what happened. So you didn't argue standing in your brief, but we got your supplemental authority yesterday about Trischel and Cooper. Was that a strategic decision on your part to wait till the day before the argument to raise the standing issue? Not at all, Your Honor. You know, standing in the 11th Circuit has been a little bit sticky pre-Trischel, and... But Trischel was issued in July. Yes, Your Honor. Yes, Your Honor. And you've been aware of that, I'm sure. Yes. Oh, yes, Your Honor. And Cooper followed three weeks thereafter, and Your Honor was on that panel. No, it wasn't a strategic decision at all. I, in all candor to the court, I read Mr. Revis's testimony, and at the time we moved for summary judgment, did not think that it was an appropriate argument to make because of the testimony that Judge Luck just read, because he did testify that he lost sleep. He testified that he was confused. But I think not, maybe not so much Trischel and Cooper, but the district court cases that have flowed from Trischel and Cooper since they were released, that's what made me give standing a second glance. And as Your Honor knows, yes, yes, Judge Luck. Judge Martin, may I ask one more question on standing? Yes. Thank you. So a lot of these cases have to do with someone gets a letter that clearly is wrong. In the case of Trischel, it said at the bottom, you pay this money. So no one really believed they owed the money. In fact, there was testimony or allegations to that effect. Here, somebody who was told that they only owed $1,000 or $1,500, the next day showed on a bank's website or a credit company's website that they now owed close to $10,000. If you're calculating Robert Luck's profit and loss for a given year, or my balance sheet, and on the plus side are my assets, the very few that I have. And then on the loss side, it now got increased by $10,000 overnight. Is that not affect my economic outlook in a very real way, as opposed to just getting a letter in the mail that says I don't really owe something? Your Honor, I have to answer that in a really lawyerly way and say that it depends, because we can't look at that incidence in isolation. We have to look at what flowed from it. And what did Mr. Rivas do after he logged into Midland Credit Online? He testified that he immediately recognized that that was wrong. It's in the declaration that he submitted in opposition to summary judgment. His conduct did not change, but for taking the screen grabs. He testified that he knew what he owed. He testified that he knew the ramifications of not making payments on time, because essentially what he was in was a consent judgment with a execution. He did not miss any payments. And more importantly, he did not pay more than he had agreed to pay pursuant to the settlement agreement. So I think that it's important not to take these things in isolation for purposes of trying to articulate a concrete injury. We have to take the whole circumstance to see if this was a concrete injury sufficient under Trussell. And here I think Article III standing is lacking. Thank you, Your Honors. All right. Thank you. Mr. Beck? Thank you, Your Honor. If I may, I would like to just revisit quickly Judge DeLuck's question regarding indirect, indirect, and the word communications enact. And I think I just wanted to point out that, although you're correct, it does not, the word communication does not occur in the cause of action that we're alleging. But I think janitos does not rely on that word or the words direct or indirect to reach the conclusion that it reaches, but rather it holds much more broadly that a decollector should not be able to avoid liability for unlawful decollection practices simply by contracting with another company to do what the law does not allow it to do itself. But the holding of the case is tied to its facts. And the facts there are that it was a 1692G subsection A, subsection 2 case, which did use the word communication, right? Yes. And all cases are tied to their facts. And I agree with that, Your Honor. But I think, but the reasoning of the court, I think, is the law that it made in the case. And the reasoning of the court is that it should not be so simple to circumvent the statute just by designating an FDCPA as a strict liability statute. And a strict liability statute means it's not, you know, a fault-based violation. It's not like a common fictitious liability principles where there has to be some failure to supervise correctly. It's about the fact that the defendant is a debt collector and someone is collecting debt on his behalf that caused a violation of has to make sense there. Otherwise, it's just too easy to circumvent. Isn't that issue addressed by the district court's reasoning here where it says there's just no evidence that the person you sued had control over the website that you're complaining about? And I mean, I saw that as the district court's reason for granting summary judgment is that just there was no control from one or the other. And that's why your response on appeal was vicarious liability, where you wouldn't need to show that control. Well, yeah, our point, I mean, it is vicarious liability in the sense that it's attributing liability to the debt collector, but it's also direct liability under the statute because the statute assigns primary liability to the debt collector, not to the agent. And so I think that the fact— But was the district court wrong about that when the district court said there's just no evidence that the entity that you sued had any control over the website that you're complaining about? Was that incorrect? I don't think there's any evidence. I think that is correct, Your Honor, that there's no evidence that there's direct control by Midland Funding over the website. But what the evidence does show is that Midland Funding itself had no employees and that it contracted with Midland Credit Management to conduct all its debt collection activities, and that included activities on the website. So the thing that Midland Credit Management was doing was pursuant to its agreement with Midland Funding to collect— Counsel, can I go back to the statute? Because the statute says, and I'm reading 1962E, which is the statute for which you alleged a violation here, a debt collector may not use any false, deceptive, or misleading representation in connection with the collection of any debt, and then gives us an example of false representation of amount of any debt. Here, where is the only evidence of a debt collector here? It's Midland, right? Midland Funding, right. There's no evidence that MCM is a debt collector here, right? That's correct. We haven't argued that it is a debt collector. Right. So if the statute only attributes liability for misleading representations to the debt collector, the only debt collector here that's being argued, and the evidence shows, is Midland, and it's undisputed that Midland did not make the representation here itself, I'm having trouble understanding how we get from step one to step two. Because by contracting with Midland Credit Management to conduct all its collections activities, it was engaged in the debt collections activities at issue, just indirectly. And yes, it is a kind of agency. Where is there indirect liability? Where do I imply indirect liability, where the definition of debt collector that you're relying on doesn't have that, and none of the definitions of any other terms rely on indirect liability? Well, I think, look, if it's true that a debt collector can be a debt collector, even though it has no employees, and it outsources all of its collections activities to its agents, if that's true, as the district court concluded, then it can't be right, that it's not liable for the outsourced collections activities. Well, it can be, but the person liable is the other debt collector, which is MCM, who was not sued. Well, that's the problem that you just raised, Your Honor, that we don't know whether MCM is a debt collector, and in many cases, it may be the debt collector. How is it not a Hanson debt collector? How is it not, it's exactly Hanson. It's collecting debt on behalf of a third party. Well, it has to be, the only thing we don't know is whether it's primary, it's primary. That's the other definition. The Hanson definition is in the regular practice of collecting debts on behalf of another. That's the... Regular practice, I'm sorry, that's the term that I meant to use. I don't think that it's been argued that MCM is engaged in the regular practice of that, because we didn't have... When the complaint was filed, and all the way up to the summary judgment was, the summary judgment motion was filed, MCM was not really the subject of the case that came up in the summary judgment motion. But I do think that if it's true that a debt collector can just be sort of like no employee entity that outsources everything to third parties, then it must be liable for that outsourcing. Otherwise, that definition means including it as a debt collector means nothing. And I'm out of time. I'm sorry, I've gone over. We appreciate the presentation. Thank you for your presentation. I think that concludes our argument in this case. And court will recess to be back in session tomorrow morning at nine o'clock. For my colleagues, my watch says it's 1045. You want to take 10 minutes and then reconvene to converse the cases? All right, I'll see you then. Thank you, counsel. Thank you. Court is in recess.